In re:　　　　　　　　　　　　　　　　　　Case No: 8:09-BK-11759
　　　　　　　　　　　　　　　　　　　　　Chapter　11

SAN MARINO NAPLES, LLC,

　　　　　　　Debtor.　　　　／
_____

# MOTION FOR ENTRY OF AN ORDER DETERMINING THAT THE DEBTOR IS SUBJECT TO THE SINGLE-ASSET REAL ESTATE PROVISIONS OF THE BANKRUPTCY CODE

General Electric Credit Equities, Inc. ("GECE"), a secured creditor of San Marino Naples, LLC ("San Marino" or the "Debtor"), by and through its undersigned counsel, respectfully moves this Court for entry of an order determining that the Debtor is subject to the single-asset real estate provisions ("SARE Provisions") of the Bankruptcy Code. In support of this Motion, GECE respectfully represents as follows:

## JURISDICTION

1.　　This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested by way of the Motion is authorized pursuant to sections 105(a) and 362(d)(3) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9013.

## FACTS

**A.  The Debtor**

2. On June 4, 2009 (the "Petition Date"), the Debtor commenced this chapter 11 bankruptcy case by the filing of a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida. The Debtor operates a 350 unit apartment complex in Naples, Florida. The Debtor failed to indicate in the appropriate "check box" on its chapter 11 petition that its sole asset is single-asset real estate within the meaning of 11 U.S.C. § 101(51B).

3. The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in this case, and no official committee of unsecured creditors has yet been appointed. As of the date hereof, the Debtor has not filed its Schedules and Statements in accordance with Fed.R.Bankr.P. 1007. The current deadline for the Debtor to file its Schedules and Statements is June 19, 2009, although the Debtor has recently moved to extend that deadline.

4. The Debtor's bankruptcy petition shows estimated assets between $0 and $50,000, and estimated liabilities between $10,000,000 and $50,000,000. The Debtor's Chapter 11 Case Management Summary (D.E. 4) states that the Debtor owes its unsecured creditors approximately $754,022.50, and that it owes GECE approximately $31,800,000. The Debtor further asserts that the apartment complex has a value of $32 million.

5. There are also some serious operational issues that cause GECE considerable concern. The Debtor is self-managed by an insider management company,

Venetian Companies, LLC ("Venetian"),[1] that, upon information and belief, lacks any significant experience with large residential tenant buildings of the type owned by the Debtor, and is very thinly staffed. Under Venetian's management, occupancy has declined from over 90% last year to just over 70% currently, while delinquent rents and receipts have increased significantly. Moreover, there are issues with the sales staff, maintenance and the physical condition of the premises that are contributing to the reduced occupancy rates. The site does not have adequate staffing and the current staff in place is not selling the property in a manner that ensures the site is being leased up with qualified residents. The vacant units are not being turned promptly, which negatively impacts leasing and the capability to occupy the units and gain income. There is considerable deferred maintenance that negatively impacts the first impression of drive-by traffic, as well as resident satisfaction to renew.[2] There are also issues regarding the Debtor's and Venetian's proper handling of rents and receipts from the property, in that the amounts turned over to GECE under the Rents Order (defined and described below) is far less than what was budgeted, and the Debtor/Venetian have not provided an adequate accounting for the time period covered by the Rents Order (March 1, 2009 to the Petition Date). As a result, GECE believes that one element of adequate protection necessarily includes the retention of a third party professional management company to operate and manage the property.

---

[1] Although the Debtor's Case Management Summary suggests that Venetian is entitled to a monthly sum of $10,500.00 for its management services, the Debtor is precluded from paying the insider entity for management services pursuant to a self-management letter delivered to GECC on or about November 9, 2006, in connection with the closing of the Loan.

[2] Among other things, the landscaping is deteriorating with many bushes dying and perimeter landscaping that is already dead, the pool is not being serviced and is in need of Diamond Brite resurfacing, and the exterior of the buildings needs to be repainted, in that the fascia board along the roof line is peeling and many hairline cracks can be seen along the sides of the buildings.

**B.  GECE's Secured Claim**

6. On or about November 21, 2006, General Electric Capital Corporation ("GECC") and San Marino entered into that certain Loan Agreement for a loan in the original principal sum of Thirty Two Million Seven Hundred Fifty Thousand and No/100 Dollars ($32,750,000.00) (the "Loan") (the "Loan Agreement").

7. The Loan was evidenced by that certain Promissory Note (the "Note") in the original principal balance of Thirty Two Million Seven Hundred Fifty Thousand and No/100 Dollars ($32,750,000.00) dated as of November 21, 2006.

8. To secure payment of the Loan described above, on or about November 21, 2006, San Marino executed and delivered to GECC that certain Mortgage, Security Agreement and Fixture Filing (the "Mortgage"). The Mortgage was recorded on November 22, 2006, in Official Records Book 4143, at page 0625 of the Public Records of Collier County, Florida.

9. To further secure payment of the Loan described above, on or about November 21, 2006, San Marino executed and delivered to GECC that certain Assignment of Rents and Leases (the "Assignment of Rents"). The Assignment of Rents was recorded on November 22, 2006, in Official Records Book 4143, at page 0640 of the Public Records of Collier County, Florida.

10. The security interest in personalty granted by San Marino was perfected by that certain UCC-1 Financing Statement recorded on November 22, 2006 in Official Records Book 4143, at page 0646 of the Public Records of Collier County, Florida and filing it with the Delaware Secretary of State. The Loan Agreement, Note, Mortgage,

Assignment of Rents and UCC-1 Financing Statement sometimes shall be referred to collectively as the "Loan Documents."[3]

11. Pursuant to the Mortgage, San Marino granted to GECC as security for its indebtedness, a security interest in certain real property located in Collier County, Florida (the "Property") being more particularly described in the legal description referenced in the Mortgage.

12. San Marino further granted to GECC a security interest in the personal property of San Marino pertaining to the Property as more particularly described in the Rider to Financing Statement (Form UCC-1) attached to the UCC-1 Financing Statement (the Property together with the assets covered by the UCC-1 Financing Statement shall be referred to as the "Collateral").

## RELIEF REQUESTED

13. GECE respectfully requests entry of an order determining that the Property is SARE and that the Debtor is subject to section 362(d)(3) of the Bankruptcy Code.

## BASIS FOR RELIEF

### A. A Determination that the Property is Single-Asset Real Estate is Necessary.

14. The plain terms of the Bankruptcy Code require that before a secured creditor may seek stay relief under section 362(d)(3) the bankruptcy court must determine that a debtor's property is single-asset real estate. Section 362(d)(3) provides, in pertinent part, that stay relief is available under that section

> no later than the date that is 90 days after the entry of the order for relief (or such later date as the court may

---

[3] The Judgement obtained by GECC pursuant to the Loan Documents has been assigned to GECE.

> determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, *which ever is later*. . . .

11 U.S.C. § 362(d)(3) (emphasis added). Because the secured creditor's right to seek stay relief under section 362(d)(3) does not ripen until the *later* of the two periods set forth in the statute, each must expire, and the second period cannot expire until the bankruptcy court has made a determination that the subject property is single-asset real estate. Therefore, the Court must make a determination that the Property is single-asset real estate for the GECE's rights under the SARE Provisions to ripen.

### B. The Property is Single-Asset Real Estate.

15. The Property is single-asset real estate within the meaning of section 101(51B). Section 101(51B) provides:

> The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

11 U.S.C. § 101(51B). Courts have parsed three elements from this definition:

> (1) real property constituting a single property or project, other than residential real property with fewer than four residential units;
>
> (2) real property that generates substantially all the debtor's income; and
>
> (3) the debtor must not be involved in any substantial business other than the operation of its real property and activities incidental thereto.

*See, e.g., Kara Homes, Inc. v. National City Bank*, 363 B.R. 399, 404 (Bankr. D.N.J. 2007).

16. These three elements are present here. First, the Property constitutes a "single property" as it is a single contiguous parcel, and it is a residential property with more than four units. Second, all of the Debtor's income is generated by the rents collected on account of leasing the apartment units on the Property. Third, the Debtor is not involved in any business, much less any substantial business, other than the operation of the Property. Any activities conducted in connection with operating the Property, such as showing apartment units to prospective lessors or mowing the lawn, are merely "activities incidental" to the operation of the Property.

17. Moreover, the cases appear uniform in taking as an axiom that an apartment building, like the Property, is single-asset real estate. *See, e.g., Centofante v. CBJ Development, Inc.*, 202 B.R. 467, 472 (B.A.P. 9th 1996) (determining that a hotel is not single-asset real estate because "in this case the operation of the [h]otel requires substantially more day to day activity than does the operation of an apartment complex"); *In re Philmont Development Co.*, 181 B.R. 220, 223 (Bankr. E.D.Pa. 1995) (describing the SARE Provisions applying in a "common situation, *i.e., typically an apartment building*, office building or 'strip' shopping center owned by an entity whose sole purpose was to operate that real estate with monies generated by the real estate") (emphasis added); *In re Golf Club Partners, L.P.*, 2007 WL 1176010, at *4 (E.D. Tex. Feb. 15, 2007) ("Because its business activities are variegated and multiple and are dependent on the entrepreneurial efforts and ongoing hard work of its principals and its other employees, *and because it does not simply lease its property to tenants as the*

*owner of true single asset real estate such as an apartment house does*, the Debtor's golf course does not fall within [the SARE Provisions].") (emphasis added). *See also In re Kkemko*, 181 B.R. 47, 50 (Bankr. S.D. Ohio 1995) ("Obviously, residential real property with more than four residential units is certainly single asset real estate. *Thus, apartment buildings and residential projects are within the scope of the definition.*") (emphasis added).

C. **An Order Determining that the Property is Single-Asset Real Estate is Necessary and Appropriate to Carry Out 11 U.S.C. §§ 101(51B) and 362(d)(3).**

18. Section 105(a) of the Bankruptcy Code provides that the bankruptcy court may issue "any order . . . that is necessary or appropriate to carry out the provisions of [title 11]." For the reasons set forth in section A of this Motion, *supra*, a determination that the Property is single-asset real estate is necessary. Moreover, it is appropriate to do so now to vindicate Congress' purpose in passing the SARE Provisions. *S. Rep. No. 168*, 103d Cong., 1st Sess. (1993) ("The amendment will ensure that the automatic stay provision is not abused, while giving the debtor an opportunity to create a workable plan of reorganization."). The determination requested by way of this Motion will afford the Debtor its statutorily prescribed 90-day breathing space to develop a chapter 11 plan or commence payments at the contract rate, and if the Debtor fails to meet these requirements, the SARE Provisions will afford GECE the expedited relief Congress intended it to have in cases such as these. *See In re 83-84 116th Owners Corp.*, 214 B.R. 530, 535 (Bankr. E.D.N.Y. 1997) (the purpose of the SARE Provisions was to damper the occurrence of abusive chapter 11 petitions, which are filed primarily to frustrate the


exercise of foreclosure remedies where there were really no unsecured creditors, no equity in the property, and no reasonable probability of a feasible plan).

19. Accordingly, entry of an Order pursuant to 11 U.S.C. § 105(a) to carry out the SARE Provisions is necessary and appropriate.

WHEREFORE, General Electric Credit Equities, Inc., respectfully requests entry of an Order determining that (i) the Property is single-asset real estate, (ii) that the Debtor is subject to section 362(d)(3) of the Bankruptcy Code, and (iii) providing such other relief as the Court deems just and proper.

Respectfully submitted this 17th day of June, 2009.

GREENBERG TRAURIG, P.A.
Counsel for General Electric Capital
Corporation and General Electric Credit
Equities, Inc.
1221 Brickell Avenue
Miami, FL 33131
305-579-0788
huttonj@gtlaw.com

By: _____
John B. Hutton, Esq.
Florida Bar No. 902160

### CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____
John B. Hutton