UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                              Case No: 8:09-BK-11759
                                                    Chapter   11
SAN MARINO NAPLES, LLC,

                Debtor.                 /

**GECE'S MOTION TO DISMISS CHAPTER 11 CASE
OR, IN THE ALTERNATIVE, FOR RELIEF FROM STAY**

General Electric Credit Equities, Inc. ("**GECE**"), a secured creditor of San Marino Naples, LLC ("**San Marino**" or the "**Debtor**"), by and through its undersigned counsel, respectfully moves this Court for entry of an order dismissing this chapter 11 case as a bad faith filing or, in the alternative, entering relief from the automatic stay pursuant to Section 362(d)(3). In support of this Motion, GECE respectfully represents as follows:

**JURISDICTION**

1.    This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested by way of the Motion is authorized pursuant to 11 U.S.C. §§ 105(a), 362(d)(3), and 1112(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001.

**PRELIMINARY STATEMENT**

2.    This is a single-asset real estate case filed to frustrate GECE's legitimate enforcement of its state-law rights. The Debtor's bad faith in filing its chapter 11 petition is evidenced by the presence of all the *Phoenix Piccadilly* factors and the terms of the Debtor's

recently filed plan of reorganization. The Debtor owns only one asset that secures GECE's debt, there are few unsecured creditors, the Debtor's financial difficulties are solely between the Debtor and GECE, the Debtor's sole asset is subject of a final judgment of foreclosure, and the bankruptcy case was commenced to stave off a sale. Moreover, the recently filed plan proposes to maintain current equity without a new value infusion in exchange for which GECE's foreclosure judgment will be canceled and GECE will receive whatever net operating income the Debtor happens to generate each month, if any, for a period of five years, an amount likely to be far less than either the terms of GECE's loan or current market terms would require. These factors establish that the Debtor has no legitimate reorganizational purpose. In light of this clear evidence of bad faith, this case must be dismissed for cause pursuant to Section 1112(b).

3. In the alternative, Section 362(d)(3) mandates the Court enter relief from the automatic stay in this single asset real estate case. The Debtor's statutorily prescribed 90-day "breathing space" has elapsed, and the Debtor has failed to file a plan that has a reasonable possibility of being confirmed in a reasonable time or to commence monthly payments in the requisite amount of contract interest. Therefore, the stay should be terminated to allow GECE to sell the Debtor's property pursuant to its final judgment of foreclosure.

## FACTS

**A. The Debtor**

4. On June 4, 2009 (the "**Petition Date**"), the Debtor commenced this chapter 11 bankruptcy case by the filing of a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida.

5. The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in this case, and no official committee of unsecured creditors has yet been appointed.

6. The Debtor operates a 350-unit apartment complex in Naples, Florida (the "**Property**"). On July 29, 2009, the Court determined that the Property is single-asset real estate within the meaning of Section 101(51B) and that the Debtor is subject to Section 362(d)(3). *Order Granting GECE's Motion for Entry of an Order Determining that the Debtor is Subject to the Single-Asset Real Estate Provision of the Bankruptcy Code*, ¶¶ 2-3 (the "**SARE Order**") [Doc No. 45].

**B.    GECE's Secured Claim**

7. On or about November 21, 2006, GECE and San Marino entered into that certain Loan Agreement for a loan in the original principal sum of Thirty Two Million Seven Hundred Fifty Thousand and No/100 Dollars ($32,750,000.00) (the "**Loan**"). As more fully set forth in GECE's *Motion for Entry of an Order Determining that the Debtor is Subject to the Single-Asset Real Estate Provisions of the Bankruptcy Code* (Doc. No. 27), the Loan was evidenced by a promissory note and secured by a mortgage on, assignment of rents to, and security interest in the personalty on the Property.

8. On May 6, 2009, GECE obtained a final judgment of foreclosure (the "**Foreclosure Judgment**"). Pursuant to the Foreclosure Judgment, a sale of the Property was schedule for June 9, 2009, just 5 days after the Petition Date.

9. As of the Petition Date, the amount owed GECE by the Debtor is $32,848,796.96. The non-default contract rate of interest is 6.22% and the amount of the monthly non-default contractual payment, which includes principal and interest, is $201,008.82.

C.  **The Chapter 11**

10. Pursuant to the *Interim Order Authorizing the Debtor's Use of Cash Collateral and Scheduling Final Hearing* [Doc No. 23] and the *Order Granting Debtor's Emergency Motion for Use of Cash Collateral Pursuant to Stipulation between Debtor and General Electric Credit Equities, Inc. and Setting Deadline for Objection to Stipulation* [Doc No. 34] (together, the "**Cash Collateral Order**"), the Debtor is required to make adequate protection payments on the 15th day of each month, based upon all the net operating income received by the Debtor for the prior month, in the minimum amount of $101,086.00, plus all amount required to fund the tax reserve (of $28,827.00 per month) (together, the "Minimum Payment"). The Debtor made the Minimum Payment for the month of July, but defaulted on the payment due for August, 2009. It did not make a payment for August until September 3 and then only in the amount of $67,870.29, approximately two-thirds of the Minimum Payment.

11. On August 18, 2009, the Debtor filed its *Plan of Reorganization* [Doc. No. 54] (the "**Plan**") and its *Disclosure Statement for Debtor's Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code* [Doc No. 53].

12. The Plan proposes to cancel the Foreclosure Judgment and pay GECE the Debtor's monthly net operating income for a period of five year in exchange for which the

Debtor's current shareholders will retain their equity in the reorganized debtor. The Plan does not propose that these shareholders furnish the reorganized debtor with an infusion of new value.

13. On August 20, 2009, the Court entered its *Order Conditionally Approving Disclosure Statement, Fixing Time to File Objections to the Disclosure Statement, Fixing Time to File Application for Administrative Expenses, Setting Hearing on Confirmation of the Plan, and Setting Deadlines with Respect to Confirmation Hearing* [Doc. No 56] (the "**Scheduling Order**"), which sets a confirmation hearing for September 24, 2009, at 10:00 a.m.

## RELIEF REQUESTED

14. GECE respectfully requests entry of an Order dismissing this chapter 11 case as a bad faith filing or, in the alternative, terminating the stay with respect to the Property pursuant to Section 362(d)(3).

## BASIS FOR RELIEF

**A.   This Case Must be Dismissed Because it was Filed in Bad Faith**

15. The Debtor filed this Chapter 11 case solely to prevent the sale of the Property and to delay GECE's legitimate enforcement efforts. The terms of the Plan recently filed by the Debtor demonstrate that nothing has changed; these terms evidence that the Debtor's strategy is merely to hold on to the Property as long as possible in the hope that market conditions will improve before the Property slips from its grasp. The Debtor is contributing *absolutely nothing* for the benefits it proposes to obtain under the Plan. Therefore, this case must be dismissed for cause pursuant to Section 1112(b).

16. Eleventh Circuit authority holds that "bad faith" is a species of "cause" under Section 1112(b). *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984). *See also In re State Street Houses, Inc.*, 356 F.3d 1345, 1347 (11th Cir. 2004) (holding *Phoenix Piccadilly* remains good law after the 1994 amendments to Section 362(d)). Moreover, the plain language of Section 1112(b) requires the bankruptcy court to dismiss the case once cause is established unless unusual circumstances exist or conversion to chapter 7 is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1).

17. In *Phoenix Piccadilly*, the Eleventh Circuit held that to determine whether bad faith exists, a bankruptcy court may consider any factors that evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, an intent "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." 849 F.2d 1393, 1394 (11th Cir. 1988). In particular, the Eleventh Circuit relied on the following factors in affirming the dismissal of a chapter 11 single-asset real estate case:

   (i)   the debtor has only one asset, the property at issue;

   (ii)  the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors;

   (iii) the debtor has few employees;

   (iv)  the property is subject to a foreclosure action as a result of arrearages on the debt;

   (v)   the debtor's financial problems essentially are a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and

   (vi)  the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*Phoenix Piccadilly*, 849 F.2d at 1394-95. *See also In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984). Although the *Phoenix Piccadilly* factors are non-exhaustive and not to be rigidly applied, the presence of all the factors constitutes sufficient cause to dismiss a case as a bad faith filing. *See State Street*, 356 F.3d at 1347 (affirming bad-faith dismissal premised on the presence of the *Phoenix Piccadilly* factors).

18. Courts in this Circuit continue to apply these bad faith factors in order to determine whether there has been a lack of good faith. *See In re Blunt*, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999); *In re Star Trust*, 237 B.R. 827, 833 (Bankr. M.D. Fla. 1999). Furthermore, the Eleventh Circuit has concluded that the bad faith factors continue to apply to single-asset real estate cases, notwithstanding the enactment in 1994 of Section 362(d)(3). *State Street*, 356 F.3d at 1347.

19. As in *Phoenix Piccadilly*, the presence of all the bad faith factors in the case at bar warrants a determination that this chapter 11 case was filed in bad faith. *See State Street*, 356 F.3d at 1347 (affirming dismissal of chapter 11 case where all "bad faith" factors were present). The Debtor owns only one asset, the Property, and has no employees. The debtors few unsecured creditors are owed only $4,022.50 compared to $32,848,796.96 owed to GECE.[1] The Property is subject to a foreclosure action and a final judgment of foreclosure obtained after negotiation with and litigation against the Debtor. The Debtor's financial problems are solely with GECE. Finally, the Debtor sought relief in chapter 11 only after the Foreclosure Judgment was entered and just five days before a sale of the Property was scheduled to occur.

---

[1] This amount is taken from the Debtor's Schedule J filed on July 29, 2009, but is exclusive of an unsecured claim in the amount of $750,000.00 owed to an insider of the Debtor.

20. Furthermore, the terms of the Plan recently filed by the Debtor evidence an absence of any purpose to legitimately reorganize, as the Plan proposes terms that are patently unconfirmable and unacceptable. The Plan proposes to generously treat the Debtor's shareholders, allowing them to retain ownership and control of the reorganized debtor without the infusion of any new value, and without any contribution whatsoever. As to GECE, the Plan proposes to cancel the Foreclosure Judgment and effectively reinstate the loan and mortgage in exchange for whatever net operating income the Debtor happens to generate in a given month, if any. The Debtor proposes this treatment for a period of five years, at the conclusion of which the Debtor may either pay off the Loan or surrender the Property to GECE. These are terms that no rational creditor would accept. Because these terms are also patently unconfirmable, the inference they suggest is that the Debtor does not genuinely propose them even as the basis to begin negotiations but rather proposes them merely to delay the day of reckoning under Section 362(d)(3).

21. This is a clear case of a bad faith filing where the debtor entered chapter 11 knowing that it had no chance to reorganize its business and without intending to contribute anything to the reorganization. The Debtor has one asset, essentially one creditor, and sought chapter 11 protection on the eve of a foreclosure sale. The Debtor is run by a management company and foreclosure by GECE will have little or no effect on its operations or tenants. The presence of all six *Phoenix Piccadilly* factors and the terms of the Plan when taken together all point ineluctably to the conclusion that the Debtor's chapter 11 petition was filed with the intent to delay and frustrate GECE's legitimate enforcement of its state-law rights.

A petition filed with such intent is filed in bad faith, and such a petition should, and must, be dismissed for cause pursuant to Section 1112(b).

**B.     In the Alternative, Stay Relief is Mandatory under Section 362(d)(3)**

22.     The plain terms of the Bankruptcy Code require that the Court enter relief from stay with respect to the Property because the Plan proposed by the Debtor has no possibility of ever being confirmed and the Debtor is not making monthly payments at the contract rate.  Section 362(d)(3) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later--
>
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>
> (B) the debtor has commenced monthly payments that--
>
> (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate

11 U.S.C. § 362(d)(3).  Thus, relief from the automatic stay must be granted where the debtor fails to timely comply with either prong of Section 362(d)(3), *i.e.*, either (i) propose a plan

that has a "reasonable possibility of being confirmed within a reasonable time" or (ii) commence monthly payments in an amount equal to the contract interest rate.

23. Pursuant to the SARE Order, the deadline for the Debtor's time to comply with Section 362(d)(3) was Wednesday, September 2, 2009 (the "**SARE Deadline**").[2] Although the Debtor had commenced monthly payments and filed the Plan before the SARE Deadline, neither the amount of the Debtor's payments nor the contents of its Plan satisfy the terms of Section 362(d)(3). The nondefault contract note of interest due GECE for August was $170,220.58, significantly more than the Minimum Payment, much less the $67,870.29 the Debtor actually paid.

24. Furthermore, the Plan does not have a "reasonable possibility of being confirmed within a reasonable time," as there is no possibility of it ever being confirmed. The Plan proposes to cancel the Foreclosure Judgment and pay GECE whatever monthly net operating income may be generated for a period of five years in exchange for which the Debtor's current shareholder will receive the equity of the reorganized debtor without the infusion of any new value. These terms are patently absurd and are terms that no rational creditor would accept. GECE does not accept them. Moreover, these terms cannot support "cram down" under Section 1129(b) because, among other reasons, they are not "fair and equitable." 11 U.S.C. 1129(b)(1).

25. Fair and equitable treatment of a dissenting secured creditor requires that the plan provide for market rate interest. Pursuant to Section 1129(b)(2)(i), where a dissenting

---

[2] The SARE Order was entered July 29, 2009, and thus, the Court's determination that the Property is single-asset real estate was made no later than that date. Thirty days from July 29, 2009 was Friday, August 28, 2009. Ninety days from the Petition Date was Wednesday, September 2, 2009.

secured creditor is proposed to receive deferred cash payments, those payments must total the allowed amount of its claim and have a present value equal to the value of the collateral. The discount rate must equal the market rate of interest. *See In re Southern States Motor Inns, Inc.*, 709 F.2d 647, 652-53 (11th Cir. 1983) (a dissenting secured creditor who is required to accept payment on its secured claim over time is entitled to receive a rate of interest that compensates it for the present value of its secured claim at the "prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default").[3] The Eleventh Circuit holds that the current market rate of interest shall be determined by the "coerced loan" approach. *Id. See also New Midland Plaza Associates*, 247 B.R. 877, 889 (Bankr. S.D. Fla. 2000). "Under the 'coerced loan' approach, the court must look to interest rates charged by the creditor making a loan to a third party with similar terms, duration, collateral and risk." *New Midland*, 247 B.R. at 889. Because the Plan fails to provide GECE *any* market rate of interest, it is not "fair and equitable."

26. The Plan is not fair and equitable for a second reason: it proposes that the Debtor's shareholders will receive equity in the reorganized debtor without paying secured and unsecured creditors in full with interest and without the shareholders providing any new value. Fair and equitable treatment of a dissenting class of unsecured claims requires that the debtor's shareholders do not receive or retain any property on account of their equity unless the dissenting class receives property with a present value equal to the full amount of the

---

[3] Although decided with respect to the treatment of tax claims under Section 1129, the Eleventh Circuit noted that the phrase "value, as of the effective date of the plan" appeared elsewhere in Section 1129 (and throughout the Code), suggesting that in each instance the applicable party was entitled to market rate interest. *Id*. at 652 n.6.

claims of the dissenting class. 11 U.S.C. § 1129(b)(2)(B)(ii). *See also In re Armstrong World Industries, Inc*. 432 F.3d 507, 513 (3d Cir. 2005) ("[t]he plain language of [Section 1129(b)(2)(B)(ii)] makes clear that a plan cannot give property to junior claimants over the objection of a more senior class that is impaired"); *Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 281 F.3d 1173, 1180 n.4 (10th Cir. 2002) ("The absolute priority rule requires that certain classes of claimants be paid in full before any member of a subordinate class is paid. Under this rule, unsecured creditors stand ahead of investors in the receiving line and their claims must be satisfied before any investment loss is compensated."); *Wilkow v. Forbes, Inc.*, 241 F.3d 552, 554 (7th Cir. 2001) ("The absolute-priority rule, codified in 11 U.S.C. § 1129(b)(2)(B)(ii), forbids confirmation of a plan of reorganization over the objection of an impaired class of creditors unless the holder of any claim or interest that is junior to the claims of such [impaired] class will not receive or retain under the plan on account of such junior claim or interest any property. In other words, creditors may insist on priority of payment: secured creditors must be paid in full before unsecured creditors retain any interest, and unsecured creditors must be paid off before equity holders retain an interest.") (internal citations and quotations omitted). Although courts have held that a debtor's shareholders may receive equity in the reorganized debtor on account of an infusion of "new value" notwithstanding Section 1129(b)(2)(B)(ii), *see*, *e.g.*, *In re Woodbrook Assocs.*, 19 F.3d 312, 319-20 (7th Cir. 1994) (assuming that the "new value precept" remains good law, it "permits old equity owners to participate in a plan, without full payment to the dissenting creditors, if they make a new contribution (1) in money or money's worth, (2) that is reasonably equivalent to the value of the new equity interests in the reorganized debtor, and (3) that is

necessary for implementation of a feasible reorganization plan"), the Plan does not propose that the Debtor's shareholders infuse any new value, and therefore, the Plan is not "fair and equitable." *See In re Zaruba*, 384 B.R. 254, 262 (Bankr. D. Ala. 2008) (holding that a plan that provided for the debtor's shareholders to retain their equity interest violated Section 1129(b)(2)(B), and was therefore not confirmable, where the plan provided for neither payment to creditors the present value of their claims nor an infusion of new value by the shareholders).[4]

27. The failure of the Debtor to comply with either prong of Section 362(d)(3) requires entry of relief from the automatic stay. Moreover, stay relief now is appropriate in order to vindicate Congress' purpose in passing the single-asset real estate provisions. *S. Rep. No. 168*, 103d Cong., 1st Sess. (1993) ("The amendment will ensure that the automatic stay provision is not abused, while giving the debtor an opportunity to create a workable plan of reorganization."). GECE and the Court have afforded the Debtor its statutorily prescribed 90-day breathing space to develop a chapter 11 plan or commence payments at the contract rate. The Debtor has failed to use that time effectively, and instead proposed a clearly unworkable plan that suggests the Debtor possess the abusive intent from which Congress sought to protect secured creditors. *See In re 83-84 116th Owners Corp.*, 214 B.R. 530, 535 (Bankr. E.D.N.Y. 1997) (the purpose of the SARE Provisions was to damper the occurrence of abusive chapter 11 petitions, which are filed primarily to frustrate the exercise of foreclosure remedies where there were really no unsecured creditors, no equity in the property, and no reasonable probability of a feasible plan).

---

[4] GECE reserves its right to set forth the foregoing objections to the confirmation of the Plan more fully, and to interpose additional objections, in any objection it may file to the Plan pursuant to the Scheduling Order.

WHEREFORE, GECE respectfully requests entry of an order dismissing this chapter 11 case as a bad faith filing or, in the alternative, granting it relief from the automatic stay pursuant to Section 362(d)(3) to continue to foreclose its mortgage on the Property, and granting it such additional and further relief as is just.

Dated: September 4, 2009

/s/ Robert A. Soriano
Robert A. Soriano
Florida Bar No. 445002
Greenberg Traurig, P.A.
625 East Twiggs Street, Suite 100
Tampa, Florida 33602
Phone: (813) 318-5700
Facsimile: (813) 318-5900
sorianor@gtlaw.com

and

John B. Hutton
Florida Bar No. 902160
John R. Dodd
Florida Bar No. 038091
Greenberg Traurig, P.A.
1221 Brickell Avenue, 27th Floor
Miami, Florida 33131
Phone: (305) 579-0500
Facsimile: (305) 579-0717

*Counsel for General Electric Capital Corporation and General Electric Credit Equities, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Dismiss Chapter 11 Case or, in the Alternative, for Relief from Stay has been served this 4th day of September, 2009 to all parties participating in CM/ECF Electronic Noticing and by U.S. Mail to:

>San Marino Naples, LLC
>401 Commercial Court, Suite A
>Venice, FL  34292
>
>R. John Cole, II
>R. John Cole, II, PA
>46 N. Washington Blvd., Suite 24
>Sarasota, FL  34236
>
>United States Trustee - TPA
>Timberlake Annex, Suite 1200
>501 East Polk Street
>Tampa, FL  33602

and the parties listed on the attached mailing matrix.

>/s/ Robert A. Soriano_____
>Attorney